UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIKLOS ENDRODY,<br><br>                    Plaintiff,<br><br>v.<br><br>M/Y ANOMALY, Official No. 670972, her tackle, gear, furniture, apparel and equipment, *in rem*, and WILLIAM and ELIZABETH ELMER, *in personam*,<br><br>                    Defendant. | No. C04-2142Z<br><br>ORDER |

This matter comes before the Court on Plaintiff's Motion to Disqualify, docket no. 34, and Plaintiff's Motion to Strike, docket no. 39. The Court has reviewed the briefing and declarations submitted by the parties. By Minute Order dated September 6, 2005, docket no. 40, the Court denied the Motion to Disqualify. This Order explains the reasons for the Court's decision.

**I.      Background**

Miklos Endrody ("Endrody") brings this action for personal injuries arising from a boat collision on the evening of July 16, 2004, at the Seattle Yacht Club outstation in Gig Harbor, Washington. Compl., docket no. 1, at ¶¶ 4, 6-7.

ORDER  1–

1    During discovery, Defendants informed Endrody of their intent to hire Dr. Theodore
2 J. Becker, Ph.D., to provide services as an expert disability analyst. Karlberg Decl., docket
3 no. 37, at Exs. C-O. On July 8, 2005, Defendants requested that Endrody submit to an
4 examination by Dr. Becker, including a Performance Capacities Evaluation ("PCE") Test.
5 Karlberg Decl., docket no. 37, at ¶ 4. Endrody did not agree to the Defendants' request,
6 arguing that Dr. Becker could not be retained in this case because he was previously
7 employed by Endrody in unrelated litigation. Id. at ¶ 10.

8    The prior litigation involved injuries sustained by Endrody during an automobile
9 accident in 1994. Windes Decl., docket no. 35, Ex. B, at 1. Endrody brought suit against the
10 other driver and retained the services of Dr. Becker in the process. Becker Decl., docket no.
11 38, at ¶ 2. Endrody's counsel during that litigation hired and later paid Dr. Becker to
12 perform a PCE Test on Endrody in October 1996. Id.; Windes Decl., docket no. 35, at Ex.
13 C. Dr. Becker summarized the results of the 1996 PCE Test (the "PCE Report") in advance
14 of the lawsuit surrounding Endrody's prior car accident. See Windes Decl., docket no. 35, at
15 Ex. B. The bulk of the PCE Test measured objective data indicators, including Endrody's
16 range of motion, limb strength, and grip strength. Id. at 5-10. The report also discussed
17 Endrody's subjective complaints at the time of the test. Id. at 1-4. Endrody does not claim
18 that he and Dr. Becker entered into any form of a confidentiality agreement during the
19 previous litigation. Endrody's 1994 litigation settled before trial, and Dr. Becker was never
20 asked to provide deposition or trial testimony as a result. Becker Decl., docket no. 38, at ¶ 4.

21    Endrody now brings this Motion to Disqualify Dr. Becker based on his work in the
22 1996 litigation. Pl. Mot., docket no. 34. Defendants maintain that employing Dr. Becker to
23 examine Endrody is within the scope of Rule 35 and Endrody cannot show that
24 disqualification is necessary. Defs. Opp'n. Br., docket no. 36. Endrody also moves to strike
25 references and documents related to actions taken by the Seattle Yacht Club following the
26

ORDER  2–

events at issue in this litigation.  Pl. Reply Br. at 2-3, docket no. 39.  The Court strikes as moot Endrody's motion to strike based on the disposition of his motion to disqualify. [1]

## II.     Discussion

This Court has the inherent authority to disqualify experts.  See Campbell Ind. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980) (District Court's broad discretion includes power to exclude the testimony of witnesses whose use at trial is prejudicial or in bad faith, as well as expert testimony); Hewlett-Packard Co. v. EMC Co., 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (federal courts have inherent power to disqualify expert witnesses); see also Koch Ref. Co. v. Jennifer L. Boudreux M/V, 85 F.3d 1178, 1181 (5th Cir. 1996) (District Court possesses inherent power to disqualify experts).  Courts exercising this authority have employed a two-prong analysis to determine whether disqualification is necessary.  Disqualification based on a prior relationship with an adversary is warranted only if: (1) the moving party possessed an objectively reasonable basis to believe that a confidential relationship existed between that party and the expert witness; and (2) confidential or privileged information was in fact provided to the expert by the moving party.  See Koch, 85 F.3d at 1181; Hewlett-Packard Co., 330 F. Supp. 2d at 1093.  In addition, courts have considered principles of fundamental fairness and prejudice to the moving party.  Hewlett-Packard Co., 330 F. Supp. 2d at 1094-95 (citing cases).  The moving party bears the burden of demonstrating that disqualification is necessary.  Id. at 1096.  While not binding upon this Court, the two-prong test and additional policy considerations adequately serve to address the competing interests of the parties and will be adopted in this case.

### A.     Confidential Relationship

Endrody must first demonstrate that he had an objectively reasonable basis to believe there was a confidential relationship with Dr. Becker in 1996.  In evaluating this factor, the

---

[1] This Court neither considered nor reviewed the materials Endrody moves to strike in reaching a conclusion regarding his Motion to Disqualify.

ORDER  3–

Court considers the frequency of interactions between expert and party, whether the parties entered into a formal confidentiality agreement, whether the party retained the expert to assist in litigation, whether work product was discussed or documents were provided to the expert, the extent to which the expert learned of the party's litigation strategies, and whether the party funded or requested the expert's opinion to be offered at trial.  A long-term relationship is more likely to exist when the "'record supports a longstanding series of interactions, which have . . . coalesced to create a basic understanding of the retaining party's modus operandi, patterns of operation, and decision-making process.'"  Hewlett-Packard, 330 F. Supp. 2d at 1093 (quoting Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588, 591 (D. Minn. 1986)).  Conversely, informal consultations occur when the expert received no insight into the present litigation strategy.  Id. at 1093.

Because the factors used to determine whether a confidential relationship existed do not clearly favor either party in this case, they are insufficient to satisfy Endrody's burden.  On the one hand, Endrody retained and paid Dr. Becker specifically to assist in the prior litigation.  Dr. Becker went so far as to prepare a report for that purpose.  These factors are consistent with a confidential relationship but inconclusive because they do not establish that the information exchange was expected to remain confidential.  On the other hand, Dr. Becker met with Endrody only once, there is no suggestion he discussed trial strategy with Endrody's counsel or received work product, and there was no confidentiality agreement.  Moreover, Dr. Becker's PCE Report, detailing the results of the original PCE Test, would certainly have become public during the prior litigation had the case not settled and, almost as certainly, will be admissible during the trial in this litigation whether or not Dr. Becker is disqualified.  These factors weigh heavily in favor of concluding that there was no expectation of confidentiality.  In sum, Endrody fails to show that the circumstances of his 1996 contact with Dr. Becker would lead a reasonable person to believe the two formed a confidential relationship.

ORDER  4–

**B.     Confidential Information**

Even were this Court to conclude that Endrody had an objectively reasonable expectation of confidentiality, disqualification would not be necessary unless there is some basis to conclude that confidential information passed between Endrody and Dr. Becker. See Hewlett-Packard, 330 F. Supp. 2d at 1093 (if only one of the factors is present, disqualification is likely inappropriate).  Confidential information is information "of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of attorney-client privilege." Id. (citations omitted).  In support of this motion, Endrody states only that "information which [Endrody] imparted to Dr. Becker is potentially relevant to the issues in this lawsuit." Pl. Mot. at 7.  While true, this argument misses the mark.  To satisfy the second prong of the analysis, the information must be *confidential*, not simply "potentially relevant."  Endrody provides no personal declaration that Dr. Becker received confidential information and no examples of the type of information, if not the specific examples,[2] that was to be held confidential in the prior litigation.  Instead, Endrody cites only the comments he made to Dr. Becker regarding his subjective complaints in 1996, which were included in Dr. Becker's non-confidential PCE Report. Windes Decl., docket no. 35, at ¶ 3.  In contrast, Dr. Becker states unequivocally that he was not provided secrets, confidences, or any other information beyond that included in the PCE Report. Becker Decl., docket no. 38, at ¶ 4.  Accordingly, Endrody cannot satisfy the second prong of the disqualification analysis.

**C.     Fundamental Fairness and Prejudice**

Notwithstanding the preceding analysis, public policy considerations such as fundamental fairness and prejudice to the moving party must also be weighed.  In this case,

---

[2] As Endrody correctly notes, disclosing all the confidential information exchanged between a party and a hired expert during the prior litigation would often defeat the purpose of bringing a motion to disqualify the expert. Pl. Reply at 4.  However, Endrody fails to even allege that confidential information of any type was exchanged with Dr. Becker.

ORDER  5–

four critical facts limit the potential prejudice to Endrody and blunt the appearance of a conflict of interest: (1) nine years have passed since Dr. Becker last interacted with Endrody; (2) Dr. Becker is not shifting sides during a single dispute; (3) Dr. Becker did not have a privileged relationship with Endrody because he is not a treating doctor; and (4) this dispute will conclude with a bench trial absent dispositive motions.  Compare Conforti & Eisele, Inc. v. Div. of Bldg. & Constr., et al., 405 A.2d 487, 491-92 (N.J. Super. 1979) (expert initially retained by the moving party could not switch sides during a multi-phase litigation after being exposed to the moving party's files and litigation strategies due to fundamental fairness).  The distance in time and lack of a privileged relationship make it unlikely Dr. Becker would have information that would prejudice Endrody as to the tangentially related issues in this case.  Similarly, the fact that this case is scheduled for a bench trial, and that the Court is now well aware of Dr. Becker's previous work with Endrody, will mitigate any perceived unfairness in allowing Dr. Becker to proceed as an expert.  There will be no jury confusion regarding Dr. Becker's previous relationship with Endrody.  Thus, this Court is persuaded that disqualification is not necessary as a matter of fairness and potential prejudice.

IT IS SO ORDERED.

DATED this 9th day of September, 2005.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER  6–